## In re IVER PEDERSON CO.

## PEDERSON et al. v. BERG et al.

Circuit Court of Appeals, Seventh Circuit. January 20, 1930.

No. 4136.

Ole J. Eggum, of Whitehall, Wis., and G. O. Linderman, of Eau Claire, Wis., for appellant.

W. S. Wadleigh, of Galesville, Wis., and H. A. Anderson, of Whitehall, Wis., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. Iver Pederson died in September, 1914, leaving individually owned real estate and a three-fifths interest in Iver Pederson & Co., a copartnership conducting a general mercantile and milling business on his real estate. By his will he directed his executors to raise, out of his estate, a trust fund of $8,000, the income from which was to be paid to Mary Pederson, his widow, during her life. Until the trust fund was created, she was to be paid $500 per year by the executors, who were a son, Albert M. Pederson, and a son-in-law, P. M. Benrud. Instead of creating the trust fund, as directed, Iver Pederson's four children (including Albert M. Pederson and the wife of Benrud) incorporated the Iver Pederson Company to which they deeded testator's real estate on October 30, 1915, for a stated consideration of $12,325, and also turned over to it testator's interest in the partnership assets, which amounted, after the payment of the partnership debts, to less than $6,000. In 1927, the corporation was adjudged a bankrupt.

The widow and the executors (appellants) filed a petition in the bankruptcy proceedings asking that the estate in the trustee's possession be impressed with a trust in favor of the widow. The defense was made by the trustee in bankruptcy and three mortgagees. The District Court, in dismissing the petition, held: (1) That the mortgagees were innocent purchasers; (2) that the widow, having acquiesced in the leaving of her legacy in the business of the corporation for upwards of ten years, was estopped; (3) that the statute of limitations did not run in favor of the corporation.

The main contention by appellees is that the statute of limitations of Wisconsin, St. Wis. 1927, § 330.10 had run because the corporation had been in adverse possession under the deed from the heirs for more than ten years. As the mortgages were taken in 1925, within two years of the adjudication in bankruptcy, the statute could not of course have run in favor of the mortgagees.

Iver Pederson's will gave his wife, in lieu of all statutory rights, furniture, household goods, etc., absolutely, the homestead for life, and made the following trust fund provision:

"I further give and bequeath to the executors of this my last will and testament, in trust for my said wife, Mary Pederson, the sum of $8,000, to have and to hold the same during the life of my said wife and to pay to her on the first day of January of each year during her life time, the total income from the said $8,000 which amount shall not be less than $500 per year; I further will and direct that my said executors shall as soon as it is practicable to realize from my said estate without sacrifice said sum of $8,000 invest said sum in first class security and continually thereafter during her life as much as practicable maintain and continue such investments; and until such investments can be made I will and direct that my executors pay to her annually on the first day of January in each year the sum of five hundred dollars ($500)."

It is stated, off the record, that the will was probated February 9, 1915, in the county court of Trempealeau county, Wisconsin, where the testator resided and the property was situated. A bond, dated February 13, 1915, was made by the executors, as trustees, to H. A. Anderson, county judge of that county, conditioned that it should be void if said trustees

"shall carry out and execute the provisions of said trust in accordance with said will and the law applicable thereto, and shall make and return to the County Court aforesaid, within such time as the Court shall direct:

"1. A true inventory of the manner of investing said trust estate under the terms of the will,

"2. Shall annually render an account to such Court of the trust in their hands and of the management, disposition and annual income thereof, * * *."

It contained other provisions, not here material. There are here shown only four items relating to the administration of the estate: (1) sometime between December 2nd and 13th, 1915, the executors filed a petition for final settlement, a part of which purports to be a statement of the personal property received by the executors, and of claims paid by them; (2) as of December 13, 1915, appears an order made by Judge Anderson, fixing February 1, 1916, as the day for hearing the petition; (3) a certificate of publication of that order; (4) following the testimony of one of the executors concerning the account shown in the application for discharge is this entry:

"This matter came on for hearing on a petition for final settlement and upon an order for the determination and adjustment of the inheritance tax. O. J. Eggum, attorney for petitioner. No minors. A. M. Pederson, one of the executors, sworn and examined. * * * Inheritance tax adjusted and paid. Final judgment entered."

Albert M. Pederson and one Runnestrand, who owned the two-fifths interest in the copartnership not owned by Iver Pederson, carried on the copartnership business during the last illness of Iver Pederson. When the corporation was organized the business was managed by Albert M. Pederson, its president, and other children of testator. The capital stock of the corporation, as first organized, was $25,000, but it was later increased to $60,000. How much stock was issued to any person does not appear, except that a son-in-law of Iver Pederson, one Aaby, who was an officer of the corporation, paid $5,000 for stock. Albert M. Pederson, without notice to the widow or to his coexecutor, had a certificate issued for 80 shares of stock to "A. M. Pederson and P. M. Benrud, as Adm. for Mrs. Iver Pederson." It also appears that stock was issued to A. M. Pederson and Runnestrand for their two-fifths interest in the copartnership. There is some testimony indicating that each got in excess of $2,000. Stock was also issued to A. M. Pederson and each of his three sisters to represent their supposed interest in the residuary estate. The net amount of the personal estate, after payment of the debts, as shown by the petition of the executors, was $5,789.75. This, added to the consideration named in the deed, showed the net value of the estate as $18,114.75.

After her husband's death, the widow was supplied from the store, first by the estate and then by the corporation, approximately $500 per year in trade. She had been sick for some 35 years, and most of the time had been confined to her house. Her husband never talked of his business affairs to her, and neither Albert M. Pederson nor his coexecutor told her anything about the business. It does not appear that she knew, until shortly before bankruptcy, that the deed was made by the heirs to the corporation. Whether she had any notice of the probate of the will, with an opportunity to renounce, as she had the right to do within one year under the laws of Wisconsin, does not ap-

pear. If it is to be presumed that she had notice by publication that the first Tuesday of February, 1916, was fixed for a hearing upon the petition for final settlement, filed by the executors, we think that no conclusion adverse to her interests can be predicated upon that fact. Neither the petition, nor the statement of the account, made any reference to the trust estate or to the real estate left by her husband. The only references to the widow or to her interests in any way are in two items: "Household furniture given Mary Pederson, $309; To support of widow for 15 months, $625." The widow testified:

"I knew that $8,000 was set aside in that will. I read it. No one told me what was to be done about the $8,000 only that it was left in the business, that is all. * * * I did not know there was a certificate of stock issued to P. M. Benrud and A. M. Pederson, as administrators, for $8,000. * * * I did not know until just lately that the three girls and Albert had any deeds on some of that property down there. They did not tell me. * * * I did not know what it meant when I heard they were incorporated. I have not found out. No one told me what it meant. I do not know what it means now. None of the children told me that they had made a deed of the store building and the mill."

It appears from the testimony of Iver Pederson that some dividends were declared upon the corporation capital stock, but when or in what amounts does not appear. It also appears that during all of the years the advancements, amounting to something like $6,000, made to the widow, had been charged to her upon the books of the company, and whatever dividends had been declared upon the stock had been credited against those charges. In June, 1926, Albert Pederson, having obtained a controlling interest in the business, sold his stock to persons named Campion. He did not sell the stock issued to himself and Benrud, as administrators, but the certificate therefor was left in the corporation records. Concerning the account upon the books against his mother, Albert M. Pederson testified:

"Well, I—this charge account of mother's—I brought that up, and he (meaning Campion) says like this: 'We'll leave your mother alone entirely and let her alone, and go on just the same as if you were here,' and I says, 'All right, if that's agreeable, I will accept under those conditions, otherwise, I won't.'"

On such evidence Mary Pederson should not be held to be estopped.

■ On behalf of the mortgagees, it is urged that the will was not notice to them because not recorded in the office of the register of deeds. That position is not tenable. Wisconsin Stats. of 1927, § 235.50; Prickett v. Muck, 74 Wis. 199, 42 N. W. 256.

■ The record does not show that the mortgagees had any abstract or made any search of the records in the office of the register of deeds, or in the County Court, or in the office of the corporation. If they had asked a single question of the executors about the trust fund, or had made any search of the records available to them, they must, inevitably, have learned, we think, of the total failure to comply with the provisions of the will. Following are the many matters of record deemed material and of which the mortgagees must be held to have had notice, many of which were not referred to either by the referee in bankruptcy or the District Judge. Searching the records, the mortgagees would have found: (1) the will of Iver Pederson and the provisions therein for his widow, including the requirement that the trust fund be established; (2) payment by the corporation to Mary Pederson of substantially $500 per annum, the amount provided in the will; (3) dividends on the $8,000 capital stock, issued to the administrators, and credited to the widow, amounted to a small part only of the annual income paid her; (4) the stock certificate for the $8,000, though made out, was not delivered to or taken away by anybody; (5) the petition for final settlement, showing that all debts had been paid and that the net value of the personal property belonging to the Iver Pederson Estate was $6,789.75; (6) that the consideration for the deed from the heirs to the corporation was $12,325—it thus appearing that, without recourse to the real estate, upon which they were taking the mortgages, there never was sufficient property out of which to create the trust fund; (7) that, considering the net value of the estate and the capital stock of the corporation, if the widow was to receive any capital stock at all $8,000 was grossly inadequate to give the trust fund even a pro rata share, to say nothing of giving it the preference to which it was entitled; (8) the trustee's bond, dated February 13, 1915, running to Judge Anderson (Judge Anderson then, and for more than a year thereafter, was county judge of Trempealeau county, he for 20 years had been a director in and attorney for one of the mortgagees and was present at the time one of the mortgages was made, his name is upon the brief for one of appellees and he here argued the cause oral-

ly); (9) that the bond was not approved by the County Court; (10) that the bond provided that the executors were to file "a true inventory of the manner of investing said trust estate under the terms of the will" within a time to be fixed by the County Judge—no such time was ever fixed and no inventory was ever filed; (11) that although the judge, on February 1, 1916, entered what is claimed to be a final order closing the estate, no reference is made therein to the trust fund, and, except as appears in the bond, the trust estate is not elsewhere in any manner referred to; (12) that Benrud, one of the trustees, had long been a director of another one of the mortgagee banks; (13) that the law of Wisconsin with reference to the investment of trust funds had not been complied with.

Even if Benrud, the executor, had not been an officer of one of the banks, and if Judge Anderson had not been County Judge and also attorney and director for the Melby Bank, we are of opinion that there are many other facts of which the mortgagees may not plead ignorance. Those facts preclude any possibility of the mortgagees having been innocent purchasers for value.

The order of the District Court in bankruptcy is reversed, with direction to enter a decree establishing the trust fund as a first lien upon the real estate coming from the estate of Iver Pederson, deceased, in the hands of the trustee.